## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| VIDA CHENIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 10 CV 2210 |
| AMERICAN AIRLINES, INC. and THE | ) | |
| BOEING COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | *Plaintiff Demands Trial by Jury* |
| | ) | |
| | ) | |

### FIRST AMENDED COMPLAINT

**NOW COMES** the Plaintiff, VIDA CHENIER, by and through her attorney, GEORGE GEORGOPOULOS, and complaining of the Defendants, AMERICAN AIRLINES, INC. (hereinafter "AMR") and THE BOEING COMPANY (hereinafter "BOEING"), states as follows:

### I.  PARTIES

1.      At all times material to this cause of action Defendant AMR was engaged in the business of operating commercial airlines as a common carrier transporting passengers for hire by air and regularly and systematically engaged in and transacted business in Cook County, Illinois.

2.      At all times material to this cause of action Defendant BOEING's headquarters and/or principle place of business have been in Cook County, Illinois. BOEING is engaged in business within the State of Illinois and in Cook County. On March 26, 2008, BOEING was engaged in

1

the business of manufacturing commercial aircraft and various component parts for those aircraft.

3.  At all times material to this cause of action Plaintiff VIDA CHENIER was and is a citizen and resident of the State of Illinois.

## COUNT I

### Personal Injury – Defendant American Airlines, Inc.

1.  On March 26, 2008, Defendant AMR, by and through its duly authorized agents and/or employees, owned, operated, managed, maintained and controlled a certain Boeing 757 aircraft ("Subject Aircraft"), as a common carrier for hire, which was designated as flight number 2073 and was scheduled to depart from O'Hare International Airport ("ORD") in Chicago, Illinois and arrive at San Juan Luis Munoz Marin International Airport ("SJU") in San Juan, Puerto Rico.

2.  On March 26, 2008, Plaintiff VIDA CHENIER was a fare-paying passenger on American Airlines flight number 2073.

3.  Approximately three or four hours after flight number 2073 departed ORD on March 26, 2008, Plaintiff VIDA CHENIER, began experiencing hypoxia, also known as oxygen deprivation. She felt extreme pressure in her ears and her ears began to pop and ache.

4.  Approximately three or four hours after flight number 2073 departed ORD on March 26, 2008, the Subject Aircraft experienced a problem with the air quality in the cabin.

5.     Upon information and belief, while onboard the Subject Aircraft and during the incident, Plaintiff was exposed to toxic fumes that entered the passenger cabin through the aircraft's ventilation system.

6.     Upon information and belief, the toxic fumes that Plaintiff was exposed to were comprised of contaminated bleed air. Bleed air is the outside air fraction of the cabin supply air that is first compressed in the aircraft engines or Auxiliary Power Unit and which can become contaminated with high temperature engine oil or hydraulic fluid and their byproducts.

7.     Approximately three or four hours after flight number 2073 departed ORD, Plaintiff VIDA CHENIER began having difficulty breathing. She began to cough violently. Her throat tightened and became painfully inflamed. Plaintiff VIDA CHENIER felt extreme pressure and burning in her chest. There was also extreme pressure in her ears. Her ears began to pop, swell and ache. She felt an unsettling feeling in her stomach and the urge to vomit. Plaintiff VIDA CHENIER developed a severe headache.

8.     After flight number 2073 landed at SJU in San Juan, Puerto Rico, Plaintiff VIDA CHENIER continued to cough violently, the tissue in her throat and lungs was irritated, she felt nauseous, disoriented, dizzy and off balance. Plaintiff VIDA CHENIER continued to feel pressure and burning in her chest. Upon arrival to Puerto Rico, Plaintiff VIDA CHENIER immediately located a Walgreens pharmacy and bought some over the counter medicine to relieve the painful symptoms she developed while on flight number 2073.

9.     On March 27, 2008 and March 28, 2008, Plaintiff VIDA CHENIER'S symptoms worsened.

3

10.    On March 29, 2008, Plaintiff VIDA CHENIER'S violent coughing became so severe that she began to cough up blood.

11.    On April 4, 2008, Plaintiff VIDA CHENIER suffered a nearly fatal stroke.

12.    Prior to the subject flight, Defendant AMR received actual or constructive notice of the dangers posed by a loss of cabin pressure to the airworthiness of the aircraft and the safety of the passengers, including Plaintiff VIDA CHENIER, aboard an aircraft.

13.    Prior to the subject flight, Defendant AMR received actual or constructive notice of the pressurization problems in its fleet and/or the Subject Aircraft.

14.    Prior to the subject flight, Defendant AMR received actual or constructive notice of the contaminated bleed air problems in its fleet and/or the Subject Aircraft.

15.    Prior to the subject flight, Defendant AMR received actual or constructive notice of the maintenance problems in its fleet and/or the Subject Aircraft.

16.    Prior to the subject flight, Defendant AMR received actual or constructive notice of the dangers posed to the safety of its passenger and crew by allowing toxic fumes and/or bleed air to enter the cabin of the Subject Aircraft through the aircraft's ventilation system.

17.    Prior to the subject flight, Defendant AMR received actual or constructive notice of contaminated bleed air and toxic fumes entering the cabin while its passengers and crew were onboard.

4

18.     As a result of the foregoing, Plaintiff VIDA CHENIER, suffered serious physical and mental ailments, during and after the subject flight, including, but not limited to: extreme pressure in her head, nasal passages, and chest; popping and swelling in the ears; trouble hearing; difficulty breathing; nasal congestion; burning in the chest, coughing with blood; sore throat and shortness of breath; gastrointestinal distress; nausea; insomnia; depression; extreme fatigue; weight loss pounds; bladder infections; blurred vision; itching, burning and irritated eyes; severe and unremitting headaches; muscle and joint aches and pains; neurological impairment; cognitive deficiencies; central and peripheral nervous system damage; memory loss; motor skill deficiencies; dizziness; weakness; disorientation; loss of balance; difficulty speaking; vision impairment; uncontrollable tremors; uncontrollable twitches and jerking motions while resting; numbness and tingling in her extremities; temporary paralysis in the entire right side of body.

19.     At all times relevant hereto, Defendant AMR as a common carrier, owner, operator, manager, and controller of the Subject Aircraft, owed Plaintiff VIDA CHENIER the duty to maintain, operate, manage and control the Subject Aircraft in a reasonably safe and prudent manner under the circumstances.

20.     At all times relevant hereto, Defendant AMR, and its officers, agents, servants, and/or employees had a duty to follow relevant safety, operation, maintenance, repair, service, and inspection procedures with regard to the Subject Aircraft.

21.     At all times relevant hereto, Defendant AMR had a duty to provide its passengers with an aircraft that was in good mechanical condition and free of defects such as pressurization and toxic fume problems.

5

22.    At all times relevant hereto, Defendant AMR, as a common carrier, owed the passengers aboard the Subject Aircraft, including Plaintiff VIDA CHENIER, the highest standard of care.

23.    On and prior to March 26, 2008, in violation of the aforesaid duties, Defendant AMR, by and through its employees and/or actual/apparent agents, was negligent as follows:

     a. Failed to properly and/or adequately inspect, maintain and/or repair the Subject Aircraft;

     b. Failed to follow relevant safety, operation, maintenance, repair, service, and inspection procedures with regard to the Subject Aircraft;

     c. Failed to install and maintain toxic fume and/or bleed air sensor equipment on the Subject Aircraft;

     d. Failed to install and maintain filters that would prevent toxic fumes from entering the cabin on the Subject Aircraft;

     e. Failed to provide its passengers with an aircraft that was in good mechanical condition and free of defects;

     f. Failed to provide its passengers with an aircraft that was free of toxic fumes;

     g. Permitted and allowed the Subject Aircraft to be flown when it knew or should have known it was not in an airworthy condition;

     h. Improperly and inadequately inspected and maintained the Subject Aircraft;

     i. Failed to properly and adequately test the Subject Aircraft;

     j. Improperly and inadequately tested and inspected the Subject Aircraft;

     k. Improperly followed or failed to follow the manufacturer's manual for maintenance of the Subject Aircraft; and

     l. Was otherwise careless and negligent.

24.    As a direct and proximate result of one or more of the aforesaid negligent acts and/or omissions, on March 26, 2008, the Subject Aircraft, experienced a problem with the air quality in the cabin.

25.    As a direct and proximate result of the aforesaid careless and negligent acts and/or omissions of the Defendant AMR, Plaintiff VIDA CHENIER suffered injuries of a personal and pecuniary nature.

    **WHEREFORE,** Plaintiff VIDA CHENIER demands judgment against Defendant AMERICAN AIRLINES, INC., for a sum in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

## COUNT II

### Breach of Contract– Defendant American Airlines, Inc.

    Plaintiff, VIDA CHENIER, by and through her attorney, GEORGE GEORGOPOULOS, and complaining of the Defendant, AMERICAN AIRLINES, INC. (hereinafter "AMR"), states as follows:

1.    Plaintiff VIDA CHENIER reavers and realleges paragraphs one (1) through twenty five (25) of Count I, as if specifically restated herein, paragraph for paragraph and word for word.

2.    Defendant AMR, issued a ticket to Plaintiff VIDA CHENIER for good value and consideration and said ticket constituted a contract for common carriage and subjected Defendant to certain duties, including, but not limited to:

7

      a. A duty to comply with applicable regulations in the maintenance, operation and supervision of its aircraft and training of its maintenance and flight crew; and

      b. A duty to comply with industry standards, company manuals and requirements in the maintenance and operation of its aircraft utilized for common carriage.

3.    As a direct and proximate result of Defendant AMR'S breach of its contractual duties, Plaintiff VIDA CHENIER suffered injuries of a personal and pecuniary nature.

   **WHEREFORE,** Plaintiff VIDA CHENIER demands judgment against Defendant AMERICAN AIRLINES, INC., for a sum in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

## <u>COUNT III</u>

### <u>Breach of Warranties– Defendant American Airlines, Inc.</u>

   Plaintiff, VIDA CHENIER, by and through her attorney, GEORGE GEORGOPOULOS, and complaining of the Defendant, AMERICAN AIRLINES, INC. (hereinafter "AMR"), states as follows:

1.    Plaintiff VIDA CHENIER reavers and realleges paragraphs one (1) through twenty five (25) of Count I, as if specifically restated herein, paragraph for paragraph and word for word.

2.    Defendant AMR issued a ticket to Plaintiff VIDA CHENIER for good value and consideration and said ticket constituted a contract for common carriage and subjected Defendant AMR to certain duties.

8

3.     Defendant AMR warranted, both expressly and impliedly, that it would provide common carriage by air transport in a manner which was reasonably safe, utilizing equipment that was free from defects, and in accordance with appropriate regulatory and industry standards.

4.     Defendant AMR breached its warranties, both express and implied, when it failed to provide common carriage by air transport in a reasonably and a forseeably safe manner, and when it utilized dangerous and defective equipment which subjected Plaintiff VIDA CHENIER to serious harm and injury.

5.     As a direct and proximate result of Defendant AMR'S breach of expressed and implied warranties, Plaintiff VIDA CHENIER suffered injuries of a personal and pecuniary nature.

**WHEREFORE,** Plaintiff VIDA CHENIER demands judgment against Defendant AMERICAN AIRLINES, INC., for a sum in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

## COUNT IV

### Willful and Wanton – Defendant American Airlines, Inc.

Plaintiff, VIDA CHENIER, by and through her attorney, GEORGE GEORGOPOULOS, and complaining of the Defendant, AMERICAN AIRLINES, INC. (hereinafter "AMR"), states as follows:

1.     Plaintiff VIDA CHENIER reavers and realleges paragraphs one (1) through twenty five (25) of Count I, as if specifically restated herein, paragraph for paragraph and word for word.

9

2.      On and prior to March 26, 2008, in violation of the aforesaid duties, Defendant AMR, by and through its employees and/or actual/apparent agents, acted willfully and wantonly as follows:

   a.   Willfully and wantonly failed to properly and/or inspect, maintain and/or repair the Subject Aircraft;

   b.   Willfully and wantonly failed to maintain the Subject Aircraft's ventilation system for its fare-paying passengers;

   c.   Willfully and wantonly failed to install and maintain toxic fume and/or bleed air sensor equipment on the Subject Aircraft;

   d.   Willfully and wantonly failed to install and maintain filters that would prevent toxic fumes from entering the cabin on the Subject Aircraft;

   e.   Willfully and wantonly failed to provide its passengers with an aircraft that was free of toxic fumes;

   f.   Willfully and wantonly permitted and allowed the Subject Aircraft to be flown when it knew or should have known that their passengers would be exposed to toxic fumes and/or bleed air;

   g.   Willfully and wantonly permitted and allowed the Subject Aircraft to be flown when it knew or should have known it was not in an airworthy condition;

   h.   Improperly and inadequately inspected and maintained the Subject Aircraft;

   i.   Willfully and wantonly failed to follow or improperly followed the manufacturer's manual for maintenance of the Subject Aircraft; and

   j.   Was otherwise willful and wanton.

3.      As a direct and proximate result of one or more of Defendant AMR'S willful and wanton acts and/or omissions, on March 26, 2008, the aforementioned Boeing 757, Flight Number 2073,

10

exposed Plaintiff VIDA CHENIER to toxic fumes that entered the passenger cabin through the aircraft's ventilation system.

4.     As a direct and proximate result of Defendant AMR'S willful and wanton acts and/or omissions, Plaintiff VIDA CHENIER suffered injuries of a personal and pecuniary nature.

**WHEREFORE,** Plaintiff VIDA CHENIER demands judgment against Defendant AMERICAN AIRLINES, INC., for a sum in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

## COUNT V

### Negligence – Defendant The Boeing Company

Plaintiff, VIDA CHENIER, by and through her attorney, GEORGE GEORGOPOULOS, and complaining of the Defendant, THE BOEING COMPANY (hereinafter "BOEING"), states as follows:

1.     Plaintiff VIDA CHENIER reavers and realleges paragraphs one (1) through twenty five (25) of Count I, as if specifically restated herein, paragraph for paragraph and word for word.

2.     On and before March 26, 2008, Defendant BOEING was engaged in the business of manufacturing commercial aircraft and various component parts for those aircraft.

3.     On and before March 26, 2008, Defendant BOEING's headquarters and/or principle place of business was and is located in Cook County, Illinois.

11

4. On a date prior to March 26, 2008, Defendant BOEING designed, manufactured, assembled, and/or sold the aforementioned aircraft and various components of that aircraft including, but not limited to, the environmental control system, bleed air system, air delivery system, filtration system, and ventilation system.

5. The Subject Aircraft was defective in the design of its environmental control system, bleed air system, air delivery system, filtration system, and ventilation system in that such systems allowed air contaminated with hazardous substances, including vaporized and/or pyrolized engine oil and/or hydraulic fluid to enter the breathing zone within the Subject Aircraft under normal operating conditions and without detection or filtration and where the users of the Subject Aircraft would foreseeably breathe such air and suffer illness and symptoms.

6. Defendant BOEING is liable because at the time of manufacture, the likelihood that the product would cause Plaintiff's harm or similar harm, and the seriousness of those harms, outweighed the burden on the manufacturer to design a product that would have prevented those harms and the adverse effect that an alternative design that was practical and feasible would have on the usefulness of the product.

7. Defendant BOEING is liable because after the Subject Aircraft was manufactured and/or assembled, Defendant learned or should have learned or knew or should have known about the potential for its environmental control system, bleed air system, air delivery system, filtration system, and ventilation system to be contaminated with vaporized and pyrolized engine oil and/or hydraulic fluid and its byproducts and/or toxic substances under normal operations and failed to issue adequate warnings or instructions concerning this danger.

12

8.      Defendant BOEING is liable because after the subject aircraft was manufactured and/or assembled, Defendant learned or should have learned or knew or should have known about the potential adverse health consequences associated with exposure to contaminated bleed air (hereinafter "dangers") and failed to issue adequate warnings or instructions concerning the risks posed to passenger and flight crew health and safely.

9.      Defendant BOEING is liable because after the Subject Aircraft was manufactured and/or assembled, Defendant learned or should have learned or knew or should have known about the dangers associated with its environmental control system, bleed air system, air delivery system, filtration system, and ventilation system and failed to retrofit and/or modify and/or redesign these systems to prevent or minimize the dangers of contamination.

10.     Defendant BOEING is liable because after the Subject Aircraft was manufactured and/or assembled, Defendant learned or should have learned or knew or should have known about the dangers associated with its environmental control system, bleed air system, air delivery system, filtration system and ventilation system and failed to place and/or recommend the placement of a filter or filters on the Subject Aircraft to prevent or minimize the danger of contamination.

11.     Defendant BOEING is liable because after the Subject Aircraft was manufactured and/or assembled, Defendant learned or should have learned or knew or should have known about the dangers associated with its environmental control system, bleed air system, air delivery system, filtration system, and ventilation system and it failed to issue updated maintenance

13

and/or inspection instructions to prevent and/or minimize the danger of contaminated air entering the passenger cabin.

12.     Defendant BOEING is liable because after the Subject Aircraft was manufactured and/or assembled, Defendant learned or should have learned or knew or should have known about the dangers associated with its environmental control system, bleed air system, air delivery system, filtration system, and ventilation system and failed to provide instructions to adequately remedy the problem or prevent re-circulated contaminated air from reentering the breathing zone within the passenger cabin or to prevent other fume events.

13.     Defendant BOEING is liable because after the subject aircraft was manufactured and/or assembled, Defendant learned or should have learned or knew or should have known about the dangers associated with its environmental control system, bleed air system, air delivery system, filtration system, and ventilation system and failed to equip its product with a contamination-detection system, sensors, or filters to detect, reduce and/or eliminate contaminated bleed air.

14.     Defendant BOEING is liable because the Subject Aircraft was not reasonably safe in construction and did not conform with Defendant's express or implied warranties.

15.     Defendant BOEING is liable because the Subject Aircraft was not reasonably safe because it deviated from the applicable specifications and performance standards.

16.     Defendant BOEING is liable because the Subject Aircraft was more dangerous than the ordinary consumer would expect and it is there for defective.

14

17.     At all times relevant hereto, Defendant BOEING owed Plaintiff VIDA CHENIER the duty to design, manufacture, assemble, and/or sell the aforementioned aircraft and the various components, some of which are mentioned above, in a reasonably safe condition.

18.     On and prior to March 26, 2008, in violation of the aforesaid duties, Defendant BOEING, by and through its employees and/or actual/apparent agents, was negligent as follows:

a.      Failed to provide proper and safe environmental control system on their aircraft which did not allow engine oil and/or hydraulic fluid and its byproducts and/or other toxic substances to vaporize, pyrolize, and contaminate the air in the passenger cabin;

b.      Failed to provide proper and safe bleed air system on their aircraft which did not allow engine oil and/or hydraulic fluid and its byproducts and/or other toxic substances to vaporize, pyrolize, and contaminate the air in the passenger cabin;

c.      Failed to provide proper and safe air delivery system on their aircraft which did not allow engine oil and/or hydraulic fluid and its byproducts and/or other toxic substances to vaporize, pyrolize, and contaminate the air in the passenger cabin;

d.      Failed to provide proper and safe filtration system on their aircraft which did not allow engine oil and/or hydraulic fluid and its byproducts and/or other toxic substances to vaporize, pyrolize, and contaminate the air in the passenger cabin;

e. Failed to provide proper and safe ventilation system on their aircraft which did not allow engine oil and/or hydraulic fluid and its byproducts and/or other toxic substances to vaporize, pyrolize, and contaminate the air in the passenger cabin;

f. Improperly designed their environmental control system, bleed air system, air delivery system, filtration system, and ventilation system;

g. Improperly manufactured their environmental control system, bleed air system, air delivery system, filtration system, and ventilation system;

h. Designed a product unsafe to an extent beyond that which would be contemplated by the ordinary consumer or user;

i. Failed to provide adequate warnings regarding the use of the environmental control system, bleed air system, air delivery system, filtration system, and ventilation system;

j. Knew or should have known about the dangers associated with its environmental control system, bleed air system, air delivery system, filtration system and ventilation system and it failed to issue updated maintenance and/or inspection instructions to prevent or minimize the danger of contaminated air entering the passenger cabin;

k. Knew or should have known about the dangers associated with its environmental control system, bleed air system, air delivery system, filtration system and

16

ventilation system and it failed to issue adequate warnings or instructions concerning this danger;

l.  Knew or should have known about the dangers associated with its environmental control system, bleed air system, air delivery system, filtration system and ventilation system and it failed to issue adequate warnings or instructions concerning the risks posed to passenger and flight crew health and safely.

m.  Knew or should have known about the dangers associated with its environmental control system, bleed air system, air delivery system, filtration system and ventilation system and it failed to retrofit and/or modify and/or redesign these systems to prevent or minimize the dangers of contamination.

n.  Knew or should have known about the dangers associated with its environmental control system, bleed air system, air delivery system, filtration system and ventilation system and it failed to place and/or recommend the placement of a filter or filters on the Subject Aircraft to prevent or minimize the danger of contamination.

o.  Knew or should have known about the dangers associated with its environmental control system, bleed air system, air delivery system, filtration system and ventilation system and it failed to issue updated maintenance and/or inspection instructions to prevent and/or minimize the danger of contaminated air entering the passenger cabin.

p.  Knew or should have known about the dangers associated with its environmental control system, bleed air system, air delivery system, filtration system and ventilation system and it failed to provide instructions to adequately remedy the problem or prevent re-circulated contaminated air from reentering the breathing zone within the passenger cabin or to prevent other fume events.

q.  Knew or should have known about the dangers associated with its environmental control system, bleed air system, air delivery system, filtration system and ventilation system and it failed to equip its product with a contamination-detection system, sensors, or filters to detect, reduce and/or eliminate contaminated bleed air.

r.  Was otherwise careless and negligent.

19.  As a direct and proximate result of one or more of the aforesaid negligent acts and/or omissions, on March 26, 2008, the Subject Aircraft, experienced a problem with the air quality in the cabin.

20.  As a direct and proximate result of the aforesaid careless and negligent acts and/or omissions of the Defendant AMR, Plaintiff VIDA CHENIER suffered injuries of a personal and pecuniary nature.

**WHEREFORE,** Plaintiff VIDA CHENIER demands judgment against Defendant BOEING for a sum in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

18

## COUNT VI

### Strict Liability – Defendant The Boeing Company

Plaintiff, VIDA CHENIER, by and through her attorney, GEORGE GEORGOPOULOS, and complaining of the Defendant, THE BOEING COMPANY (hereinafter "BOEING"), states as follows:

1.     Plaintiff VIDA CHENIER reavers and realleges paragraphs one (1) through twenty five (25) of Count I, as if specifically restated herein, paragraph for paragraph and word for word.

2.     At all relevant times including the time in the aforementioned aircraft left the custody and control of Defendant BOEING, the aforementioned aircraft was defective and unreasonably dangerous in one or more of the following ways:

a.     Failed to provide proper and safe environmental control system on their aircraft which did not allow engine oil  and/or hydraulic fluid and its byproducts and/or other toxic substances to vaporize, pyrolize, and contaminate the air in the passenger cabin;

b.     Failed to provide proper and safe bleed air system on their aircraft which did not allow engine oil and/or hydraulic fluid and its byproducts and/or other toxic substances to vaporize, pyrolize, and contaminate the air in the passenger cabin;

19

c.  Failed to provide proper and safe air delivery system on their aircraft which did not allow engine oil and/or hydraulic fluid and its byproducts and/or other toxic substances to vaporize, pyrolize, and contaminate the air in the passenger cabin;

d.  Failed to provide proper and safe filtration system on their aircraft which did not allow engine oil and/or hydraulic fluid and its byproducts and/or other toxic substances to vaporize, pyrolize, and contaminate the air in the passenger cabin;

e.  Failed to provide proper and safe ventilation system on their aircraft which did not allow engine oil and/or hydraulic fluid and its byproducts and/or other toxic substances to vaporize, pyrolize, and contaminate the air in the passenger cabin;

f.  Improperly designed their environmental control system, bleed air system, air delivery system, filtration system, and ventilation system;

g.  Improperly manufactured their environmental control system, bleed air system, air delivery system, filtration system, and ventilation system;

h.  Designed a product unsafe to an extent beyond that which would be contemplated by the ordinary consumer or user;

i.  Failed to provide adequate warnings regarding the use of the environmental control system, bleed air system, air delivery system, filtration system, and ventilation system;

j.  Knew or should have known about the dangers associated with its environmental control system, bleed air system, air delivery system, filtration system and

20

ventilation system and it failed to issue updated maintenance and/or inspection instructions to prevent or minimize the danger of contaminated air entering the passenger cabin;

k.    Knew or should have known about the dangers associated with its environmental control system, bleed air system, air delivery system, filtration system and ventilation system and it failed to issue adequate warnings or instructions concerning this danger;

l.    Knew or should have known about the dangers associated with its environmental control system, bleed air system, air delivery system, filtration system and ventilation system and it failed to issue adequate warnings or instructions concerning the risks posed to passenger and flight crew health and safely.

m.    Knew or should have known about the dangers associated with its environmental control system, bleed air system, air delivery system, filtration system and ventilation system and it failed to retrofit and/or modify and/or redesign these systems to prevent or minimize the dangers of contamination.

n.    Knew or should have known about the dangers associated with its environmental control system, bleed air system, air delivery system, filtration system and ventilation system and it failed to place and/or recommend the placement of a filter or filters on the Subject Aircraft to prevent or minimize the danger of contamination.

21

o.  Knew or should have known about the dangers associated with its environmental control system, bleed air system, air delivery system, filtration system and ventilation system and it failed to issue updated maintenance and/or inspection instructions to prevent and/or minimize the danger of contaminated air entering the passenger cabin.

p.  Knew or should have known about the dangers associated with its environmental control system, bleed air system, air delivery system, filtration system and ventilation system and it failed to provide instructions to adequately remedy the problem or prevent re-circulated contaminated air from reentering the breathing zone within the passenger cabin or to prevent other fume events.

q.  Knew or should have known about the dangers associated with its environmental control system, bleed air system, air delivery system, filtration system and ventilation system and it failed to equip its product with a contamination-detection system, sensors, or filters to detect, reduce and/or eliminate contaminated bleed air.

r.  The aforementioned aircraft was otherwise defective.

3.  As a direct and proximate result of one or more of the above-listed defective and unreasonably dangerous conditions, on March 26, 2008, the aforementioned Boeing 757, Flight Number 2073, exposed Plaintiff VIDA CHENIER to toxic fumes that entered the passenger cabin through the aircraft's ventilation system.

22

4.     As a direct and proximate result of one or more of the above-listed defective and unreasonably dangerous conditions, Plaintiff VIDA CHENIER suffered injuries of a personal and pecuniary nature.

**WHEREFORE,** Plaintiff VIDA CHENIER demands judgment against Defendant BOEING for a sum in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

## COUNT VII

### Wilful and Wanton – Defendant The Boeing Company

Plaintiff, VIDA CHENIER, by and through her attorney, GEORGE GEORGOPOULOS, and complaining of the Defendant, THE BOEING COMPANY (hereinafter "BOEING"), states as follows:

1.     Plaintiff VIDA CHENIER reavers and realleges paragraphs one (1) through twenty five (25) of Count I and paragraphs two (2) through seventeen (17) of Count V, as if specifically restated herein, paragraph for paragraph and word for word.

2.     On and prior to March 26, 2008, in violation of the aforesaid duties, Defendant BOEING, by and through its employees and/or actual/apparent agents, was willful and wanton in the following ways:

a.     Failed to provide proper and safe environmental control system on their aircraft which did not allow engine oil  and/or hydraulic fluid and its byproducts and/or other toxic substances to vaporize, pyrolize, and contaminate the air in the passenger cabin;

23

b.  Failed to provide proper and safe bleed air system on their aircraft which did not allow engine oil and/or hydraulic fluid and its byproducts and/or other toxic substances to vaporize, pyrolize, and contaminate the air in the passenger cabin;

c.  Failed to provide proper and safe air delivery system on their aircraft which did not allow engine oil and/or hydraulic fluid and its byproducts and/or other toxic substances to vaporize, pyrolize, and contaminate the air in the passenger cabin;

d.  Failed to provide proper and safe filtration system on their aircraft which did not allow engine oil and/or hydraulic fluid and its byproducts and/or other toxic substances to vaporize, pyrolize, and contaminate the air in the passenger cabin;

e.  Failed to provide proper and safe ventilation system on their aircraft which did not allow engine oil and/or hydraulic fluid and its byproducts and/or other toxic substances to vaporize, pyrolize, and contaminate the air in the passenger cabin;

f.  Improperly designed their environmental control system, bleed air system, air delivery system, filtration system, and ventilation system;

g.  Improperly manufactured their environmental control system, bleed air system, air delivery system, filtration system, and ventilation system;

h.  Designed a product unsafe to an extent beyond that which would be contemplated by the ordinary consumer or user;

24

i.   Failed to provide adequate warnings regarding the use of the environmental control system, bleed air system, air delivery system, filtration system, and ventilation system;

j.   Knew or should have known about the dangers associated with its environmental control system, bleed air system, air delivery system, filtration system and ventilation system and it failed to issue updated maintenance and/or inspection instructions to prevent or minimize the danger of contaminated air entering the passenger cabin;

k.   Knew or should have known about the dangers associated with its environmental control system, bleed air system, air delivery system, filtration system and ventilation system and it failed to issue adequate warnings or instructions concerning this danger;

l.   Knew or should have known about the dangers associated with its environmental control system, bleed air system, air delivery system, filtration system and ventilation system and it failed to issue adequate warnings or instructions concerning the risks posed to passenger and flight crew health and safely.

m.   Knew or should have known about the dangers associated with its environmental control system, bleed air system, air delivery system, filtration system and ventilation system and it failed to retrofit and/or modify and/or redesign these systems to prevent or minimize the dangers of contamination.

25

n.   Knew or should have known about the dangers associated with its environmental control system, bleed air system, air delivery system, filtration system and ventilation system and it failed to place and/or recommend the placement of a filter or filters on the Subject Aircraft to prevent or minimize the danger of contamination.

o.   Knew or should have known about the dangers associated with its environmental control system, bleed air system, air delivery system, filtration system and ventilation system and it failed to issue updated maintenance and/or inspection instructions to prevent and/or minimize the danger of contaminated air entering the passenger cabin.

p.   Knew or should have known about the dangers associated with its environmental control system, bleed air system, air delivery system, filtration system and ventilation system and it failed to provide instructions to adequately remedy the problem or prevent re-circulated contaminated air from reentering the breathing zone within the passenger cabin or to prevent other fume events.

q.   Knew or should have known about the dangers associated with its environmental control system, bleed air system, air delivery system, filtration system and ventilation system and it failed to equip its product with a contamination-detection system, sensors, or filters to detect, reduce and/or eliminate contaminated bleed air.

r.   Was otherwise willful and wanton

26

3.     As a direct and proximate result of one or more of Defendant AMR'S willful and wanton acts and/or omissions, on March 26, 2008, the aforementioned Boeing 757, Flight Number 2073, exposed Plaintiff VIDA CHENIER to toxic fumes that entered the passenger cabin through the aircraft's ventilation system.

4.     As a direct and proximate result of Defendant BOEING's willful and wanton acts and/or omissions, Plaintiff VIDA CHENIER suffered injuries of a personal and pecuniary nature.

**WHEREFORE,** Plaintiff VIDA CHENIER demands judgment against Defendant BOEING for a sum in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

Respectfully Submitted,

_____/s/ George Georgopoulos_____
George Georgopoulos, Attorney for Plaintiff

27

Under penalties as provided by law pursuant to the Federal Rules of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters the reinstated to be on information and belief as to such matters the undersigned as aforesaid states that he/she verily believes the same to be true.

_____ /s/ Vida Chenier _____
VIDA CHENIER

George Georgopoulos, Esq.
Law Office of George Georgopoulos
5701 N. Sheridan Road, Suite 26F
Chicago, Illinois 60660
312-523-3199 Office
312-275-7664 Fax
Geopolis6@yahoo.com